OCJVPERP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

     v.                        24 Cr. 428 (PAE)

ERIC PEREZ,

          Defendant.          Plea

------------------------------x

                                 New York, N.Y.
                                 December 19, 2024
                                 3:05 p.m.

Before:

                  HON. PAUL A. ENGELMAYER,

                              District Judge

                      APPEARANCES

EDWARD Y. KIM
     Acting United States Attorney for the
     Southern District of New York
KATHRYN WHEELOCK
     Assistant United States Attorney

ELIZABETH E. MACEDONIO
JEFF HENLE
     Attorneys for Defendant

(Case called)

THE DEPUTY CLERK:  Starting at the front table, please state your appearance for the record.

MS. WHEELOCK:  Good afternoon, your Honor.

Kate Wheelock, for the United States.

THE COURT:  Good afternoon, Ms. Wheelock.

MS. MACEDONIO:  Good afternoon, your Honor.

Elizabeth Macedonio and Jeff Henle, for Mr. Perez.

tTHE COURT:  Good afternoon, Ms. Macedonio.  Good afternoon, Mr. Henle.  Good afternoon to you, Mr. Perez.

You may all be seated.

Ms. Macedonio, I take it your client is prepared today to plead guilty to Count Four of the indictment, and to do so pursuant to a plea agreement; is that correct?

MS. MACEDONIO:  That is correct, your Honor.

THE COURT:  I'm going to mark the plea agreement, which is signed and which has been handed up to me, as Government Exhibit 1.  And later in this proceeding, I'll have questions for counsel and for the defendant about the guilty plea.

You may be seated.

Mr. Perez, is it correct that you intend today to plead guilty to Count Four of the indictment?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Would you kindly move the microphone

OCJVPERP

closer to you.

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Very good.

And again, that's pursuant to the plea agreement that's been handed up?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right.

Before I accept your guilty plea, I'm going to ask you certain questions so that I can establish to my satisfaction that you wish to plead guilty because you are guilty and not for some other reason. If you don't understand any of my questions or you'd like a further opportunity to consult with your attorney, will you please let me know?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are you able to speak and understand English?

THE DEFENDANT: Yes.

THE COURT: Mr. Smallman, would you kindly place Mr. Perez under oath.

(Defendant sworn)

THE COURT: Thank you. You may be seated.

Do you understand that you are now under oath, and that if you answer any of my questions falsely, your answers to my questions may be used against you in another prosecution for perjury?

OCJVPERP

THE DEFENDANT:  Yes.

THE COURT:  What is your full name?

THE DEFENDANT:  Eric James Perez Bothwell.

THE COURT:  How old are you?

THE DEFENDANT:  38.

THE COURT:  How far did you go in school?

THE DEFENDANT:  I think the ninth grade.

THE COURT:  Where was that?

THE DEFENDANT:  In Holyoke, Massachusetts.

THE COURT:  Have you ever been treated or hospitalized for any mental illness?

THE DEFENDANT:  Yes.

THE COURT:  When was that?

THE DEFENDANT:  When I was a kid.

THE COURT:  What was the outcome of that treatment?

THE DEFENDANT:  Medication, a lot of medication.

THE COURT:  Are you still being treated for that condition?

THE DEFENDANT:  No.

THE COURT:  All right.

Are you now or are you presently -- excuse me.  Are you now or have you recently been under the care of a doctor or a psychiatrist?

THE DEFENDANT:  Yeah, I'm at the jail, yes.

THE COURT:  For what condition or conditions?

THE DEFENDANT:  I'm just going to therapy for PTSD.

THE COURT:  All right.

Have you been diagnosed with PTSD?

THE DEFENDANT:  Yes.

THE COURT:  Does that condition in any way interfere with your ability to understand what's being said to you or to communicate or to think clearly?

THE DEFENDANT:  No.

THE COURT:  Have you ever been hospitalized or treated for addiction to any drugs or to alcohol?

THE DEFENDANT:  No.

THE COURT:  In the past 24 hours, have you taken any drugs, medicine or pills, or drunk any alcoholic beverages?

THE DEFENDANT:  No.

THE COURT:  Is your mind clear today?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand what's happening in this proceeding?

THE DEFENDANT:  Yes.

THE COURT:  Ms. Macedonio, do you have any doubt as to your client's competence to plead at this time?

MS. MACEDONIO:  No, your Honor, I do not.

THE COURT:  How about you, Ms. Wheelock?

MS. WHEELOCK:  No.

THE COURT:  Based on Mr. Perez's responses to my

questions, based on his demeanor as he appears before me — and I find him to be very clear and direct and responsive — and based on counsel's independent assessments, I find that Mr. Perez is competent to enter a plea of guilty at this time.

Have you had a sufficient opportunity to discuss your case with your attorneys?

THE DEFENDANT: Yes.

THE COURT: Have you had a sufficient opportunity to discuss with them the charge to which you intend to plead guilty, any possible defenses to that charge, and the consequences of entering a plea of guilty?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with your attorney's representation of you, including in connection with reaching a plea agreement?

THE DEFENDANT: Yes.

THE COURT: I'm now going to explain certain constitutional rights that you have. You'll be giving up these rights if you enter a plea of guilty.

Under the Constitution and laws of the United States, you are entitled to a speedy and a public trial by a jury on the charges contained in the indictment.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: At that trial, you'd be presumed to be

innocent and the government would be required to prove you guilty by competent evidence and beyond a reasonable doubt before you could be found guilty. You would not have to prove that you were innocent and a jury of 12 people would have to agree unanimously that you were guilty.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: At that trial and at every stage of your case, you would be entitled to be represented by an attorney; and if you could not afford one, one would be appointed to represent you free of charge. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: During a trial, the witnesses for the government would have to come to court and testify in your presence, and your lawyers could cross-examine the witnesses for the government, object to evidence offered by the government and, if you desired, issue subpoenas, offer evidence, and compel witnesses to testify on your behalf.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: At a trial, although you would have the right to testify if you chose to do so, you would also have the right not to testify. And no inference or suggestion of guilt could be drawn from the fact that you did not testify, if that was what you chose to do. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: At trial, the government would have to prove each and every part or element of a charge beyond a reasonable doubt for you to be convicted of that charge.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you are convicted at a trial, you would then have the right to appeal that guilty verdict?

THE DEFENDANT: Yes.

THE COURT: Even at this time, right now, even as you are in the process of entering this guilty plea, you have the right to change your mind, plead not guilty, and go to trial.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you plead guilty and I accept your plea, you'll give up your right to a trial and the other rights that I've just described. There will be no trial and I will enter a judgment of guilty and sentence you on the basis of your guilty plea, after considering the submissions relating to sentencing that I receive from you, your lawyer, and the government, as well as a presentence report prepared by the probation department. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And if you plead guilty, you'll also have

OCJVPERP

to give up your right not to incriminate yourself; because today I will ask you questions about what you did in order to satisfy myself that you are, in fact, guilty as charged.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Mr. Perez, have you received a copy of the indictment containing the charges against you?

THE DEFENDANT: Yes.

THE COURT: Have you read it?

THE DEFENDANT: Yes.

THE COURT: Have you had a full opportunity to discuss it with your attorneys and have you done so?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you're charged in Count Four with knowingly possessing and transferring a machine gun in the manner in which that's described and defined in Title 26, United States Code, Section 5845(b), and aiding and abetting that same offense. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right.

And Ms. Wheelock, would you kindly set out the elements of that offense.

MS. WHEELOCK: Yes, your Honor.

The elements of the offense are as follows:

First, that the defendant possessed a firearm as

described in the indictment.

Second, that the firearm the defendant possessed was a machine gun as defined by 26 U.S.C. 5845(b).

And third, that the defendant acted knowingly.

THE COURT: All right.

Ms. Macedonio, are you in agreement with that summary of the elements provided by government counsel?

MS. MACEDONIO: I am, your Honor.

But I would like to note that the way the indictment reads is that Mr. Perez sold a part designed to convert a weapon into a machine gun.

THE COURT: Yeah. Ms. Wheelock, help me with that. I want to make sure I've got a precisely tailored description of the elements as they would be germane here.

MS. WHEELOCK: Yes, your Honor.

So there's a cross-reference. The firearm -- there's a cross-reference to a machine gun; and then machine gun includes -- the definition includes parts. And I'm happy to read the definition if that would be helpful.

THE COURT: Sure. Go ahead.

MS. WHEELOCK: So the definition of "machine gun" — one moment — is the term "machine guns" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot automatically more than one shot without manual reloading by a single function of the trigger.

The term shall also include the framer or receiver of any such weapon, any part designed and intended solely and exclusively or combination of parts designed and intended for use in converting a weapon into a machine gun.

THE COURT: Thank you very much. Both of you, thank you for that.

So with that, Mr. Perez -- well, let me make sure. Ms. Macedonio, you do agree that with the elements as set out by government counsel, including the elaboration of how a machine gun is defined by statute.

MS. MACEDONIO: Yes, your Honor.

I just wanted it to be clear as to what he was going to be allocuting to.

THE COURT: No, understood. And that was helpful and I appreciate that.

Mr. Perez, did you hear and understand government counsel as she set out the elements of the offense?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you were to go to trial, the government would have to prove all of those elements beyond a reasonable doubt?

THE DEFENDANT: Yes.

THE COURT: Turning to the consequences of a guilty plea, do you understand that the maximum possible penalty for this offense is ten years' imprisonment?

THE DEFENDANT: Yes.

THE COURT: That's the maximum term of imprisonment.

And do you understand there's no mandatory minimum term of imprisonment?

THE DEFENDANT: Yes.

THE COURT: All right.

Do you understand that the maximum fine for this offense is the greatest of $250,000, twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to people other than you resulting from the offense?

THE DEFENDANT: Yes.

THE COURT: For pleading guilty to this crime, you may receive a term of up to three years' supervised release.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: So "supervised release" means that you'll be subject to monitoring when you're released from prison. There are terms of supervised release with which a person must comply. If you don't comply with them, you can be returned to prison without a jury trial for all or part of the term of supervised release imposed by the Court.

Under those circumstances, you would not be given any credit towards that term for the time you served in prison as a result of your sentence for this crime, nor would you necessarily be given any credit towards that term for any time

OCJVPERP

you had spent on post-release supervision.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: For pleading guilty to this crime, you'll be required to pay a mandatory $100 special assessment.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Government, is restitution available for this offense? It appears not.

MS. WHEELOCK: No, your Honor.

THE COURT: Okay.

For pleading guilty to this crime, you may be compelled to forfeit any and all property constituting and derived from proceeds obtained by your criminal conduct.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you also understand that if I accept your guilty plea and adjudge you guilty, that may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm?

THE DEFENDANT: Yes.

THE COURT: Are you a United States citizen?

THE DEFENDANT: Yes.

THE COURT: Are you a naturalized citizen or a

natural-born citizen? Were you born in this country?

THE DEFENDANT: Puerto Rico.

THE COURT: Okay. Well, that counts. Correct?

THE DEFENDANT: Yes.

THE COURT: Government? I mean, he is a natural-born citizen.

MS. WHEELOCK: Yes.

THE COURT: Okay. Very good. All right.

Then I think I need not inquire any further with respect to the Second Circuit's recent decision, right?

MS. MACEDONIO: Yes, that's correct.

MS. WHEELOCK: That's correct.

THE COURT: Okay. Fine.

This is a point of some ferment and I just wanted to make sure, given that Mr. Perez was born in this country, nobody believes there's further inquiry that need be done. I don't think there is.

All right. Under current law, there are sentencing guidelines, as well as other factors, set forth in the sentencing statutes that judges must consider in determining a defendant's sentence. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you spoken with your attorneys about the sentencing guidelines and those other factors?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that the Court will not be able to determine the guideline range that will form a part of the Court's determination of what a reasonable sentence will be in your case until after a presentence report has been prepared and until after you and your attorney and the government all have had an opportunity to challenge any of the facts reported there by the probation officer?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that even though the parties in the plea agreement have agreed that the sentencing guidelines, which would ordinarily call for a term of between 151 and 188 months' imprisonment, call here for a term of 120 months' imprisonment because of the statutory maximum? Do you understand that even though the parties in this case have agreed that the guidelines call for a term of 120 months' imprisonment, the parties' agreement about what the guidelines recommend is not binding on the probation department and it's not binding on the Court?

THE DEFENDANT: I don't know what that means.

MS. MACEDONIO: May I have a moment, your Honor?

THE COURT: Of course.

(Counsel conferred)

MS. MACEDONIO: Thank you, your Honor.

THE COURT: Maybe how about if both counsel and the defendant each have a microphone; that way you don't have to

share.  Ms. Macedonio, why don't you take one for yourself. That's all.

Okay.  So, yeah, back to the question.

Do you understand ultimately that the parties' agreement as to what the sentencing guidelines recommend isn't binding on the probation department and it's not binding on the Court?  I've got to make my own independent determination of what the sentencing guidelines recommend.

THE DEFENDANT:  Yes, your Honor.

THE COURT:  All right.

And do you understand that even after I've determined what guideline range applies to your case, I have the discretion under the current law to impose a sentence that is higher or lower than the one suggested by the guidelines, with the important reminder that I cannot impose a sentence above the statutory maximum, which is here 120 months' imprisonment?

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that if your attorneys or anyone else -- if anyone else has attempted to predict what your sentence will be, their prediction could be wrong?  No one, not your attorneys, not the government's attorney, no one can give you any assurance of what your sentence will be, because I'm going to decide your sentence and I'm not going to do that now and I really can't do that now.

Instead, I'm going to wait until I receive the presentence report prepared by the probation department, I'm going to wait until I receive what I know will be thoughtful sentencing submissions from the government and from the defense, I'm going to do my own independent calculation of what the guidelines recommend. Most of all, I'm going to determine what a just and a reasonable sentence is for you based on all of the factors contained in the sentencing statute which is known as Section 3553(a). Do you understand all that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you discussed these issues and the overall sentencing process with your attorneys?

THE DEFENDANT: Yes, your Honor.

THE COURT: Even if your sentence is different from what your attorneys or anyone else has told you it might be, even if it's different from what you expect, you would still be bound by your guilty plea and you would not be allowed to withdraw your plea of guilty. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Has anyone threatened you or anyone else or forced you in any way to plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: Counsel earlier told me that there was -- you did a plea agreement that's been entered into. I'm looking at Government Exhibit 1.

Let's see, Ms. Wheelock, is this the signature of your colleague Edward Robinson?

MS. WHEELOCK:  It is.

THE COURT:  And is this the electronic signature of the co-chief of the violent and organized crime unit, Andrew Chan.

MS. WHEELOCK:  It is.

THE COURT:  Ms. Macedonio, is this your signature dated today?

MS. MACEDONIO:  Yes, your Honor.

THE COURT:  Mr. Perez, is this your signature dated today?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Mr. Perez, did you read this agreement before you signed it?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Did you discuss it with your attorneys before you signed it?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Did you believe that you understood the agreement at the time you signed it?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Did you willingly sign the agreement?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Did anybody force you to sign it?

THE DEFENDANT: No, your Honor.

THE COURT: Do you have any agreement with the government about your plea or your sentence that has been left out of this written agreement?

THE DEFENDANT: Excuse me?

THE COURT: Has anything been left out? Do you have any agreement with the government that's been left out of this agreement?

THE DEFENDANT: No, your Honor.

THE COURT: All right.

Government counsel, would you kindly summarize the material -- the important terms of the plea agreement.

MS. WHEELOCK: So the important terms of the plea agreement are that the defendant will plead guilty to Count Four; Counts One through Three of the indictment would be dismissed.

There's a forfeiture admission in here as well, that's the bottom of page 1.

And then one thing of particular importance in my view, on page 4, that either party may seek a sentence outside of the stipulated guideline range which your Honor just talked about.

And then as well on page 5, there is what we all know as the appeal waiver that has a number of provisions. But one of them is that the defendant will not appeal a sentence at or

OCJVPERP

below the stipulated guideline sentence of 120 months.

THE COURT: Thank you. Very helpful.

Ms. Macedonio, are you in agreement with the government's summary of the terms that government counsel covered?

MS. MACEDONIO: I am, your Honor. Except I will note that at page 4, either party may seek a sentence outside of the stipulated guideline range based upon the 3553(a) factors.

THE COURT: I think government counsel said that.

MS. MACEDONIO: Just wanted to make sure I heard that.

THE COURT: No, you got it right.

Okay. Very good.

And Mr. Perez, did you hear and understand the government's account of certain terms in the plea agreement?

THE DEFENDANT: Yes.

THE COURT: All right. I'll just focus on the appeal waiver provision just for a moment.

Do you understand that under the agreement, you're giving up your right to appeal or otherwise challenge your sentence so long as I don't sentence you to more than 120 months in prison?

THE DEFENDANT: Yes.

THE COURT: All right.

Has anyone made any promise or done anything other than what is contained in the plea agreement to induce you to

plead guilty.

THE DEFENDANT: No.

THE COURT: Has anyone made a promise to you as to what your sentence will be?

THE DEFENDANT: No, your Honor.

THE COURT: Do you still wish to plead guilty pursuant to this agreement?

THE DEFENDANT: Yes, your Honor.

THE COURT: At this point, I'd like you to tell me in your own words what you did that makes you believe you're guilty of Count Four in the indictment.

Ms. Macedonio.

MS. MACEDONIO: Your Honor, we've prepared a written allocution. And if the Court permits so, Mr. Perez will be reading from that.

THE COURT: That's totally fine.

I just need to ask you this question, Mr. Perez, before you do that: The written -- the writing you're going to be reading from, is that something you've already reviewed before today?

THE DEFENDANT: Yes, your Honor.

THE COURT: And are you confident that it's accurate?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Go ahead.

THE DEFENDANT: On above May 6, 2024, in the Southern

District and other places, I sold a part designed to convert a gun into a machine gun. When I did this, I knew what the part was designed to do. I also knew this conducted -- this conduct was illegal.

THE COURT: I think I didn't hear something you said in the first sentence. Can you just give me that again? Maybe move the microphone a little closer and speak a little louder.

Thank you.

THE DEFENDANT: On or above May 6, 2024, in the Southern District and other places, I sold a part designed to convert a gun into a machine gun. When I did this, I knew what the part was designed to do. I also knew this conduct was illegal.

THE COURT: All right. Thank you.

When you sold that part, did you, in fact, also possess that part?

THE DEFENDANT: Yes.

THE COURT: Okay. And when you did that, did you know that what you were doing -- when you did the conduct you described, did you know that what you were doing was wrong?

THE DEFENDANT: Yes.

THE COURT: Did you know you were committing a crime?

THE DEFENDANT: Yes.

THE COURT: Government counsel, do you agree that there's a sufficient factual predicate for a guilty plea?

OCJVPERP

MS. WHEELOCK: I do.

THE COURT: Defense counsel?

MS. MACEDONIO: I do, your Honor.

THE COURT: Ms. Macedonio, do you know of any valid defense that would prevail at trial or any reason why your client should not be permitted to plead guilty?

MS. MACEDONIO: No, I do not.

THE COURT: Mr. Perez, are you pleading guilty today voluntarily and of your own free will and because you are, in fact, guilty?

THE DEFENDANT: Yes, your Honor.

THE COURT: Can government counsel represent that had the case gone to trial, the government had sufficient evidence of each element to establish a conviction?

MS. WHEELOCK: Yes.

THE COURT: All right.

Mr. Perez, because you've acknowledged that you are, in fact, guilty as charged in the indictment; because I'm satisfied that you know of your rights, including your right to go to trial; because I'm satisfied that you are aware of the consequences of your plea, including the sentence that may be imposed; and because I find that you're voluntarily pleading guilty, I accept your guilty plea and enter a judgment of guilty on the one count to which you have pled guilty.

Now, the next step in your case is going to involve

the sentencing process. I'm going to ask you to pay close attention to what I'm about to say.

The probation department is going to want to interview you in connection with the presentence report that it prepares. If you choose to speak with the probation department, please make sure that anything you say to them is truthful and accurate. I read those reports carefully and they are often very important to me in deciding what is the just and reasonable sentence.

You and your counsel have a right to examine the report and to comment on it at the time of sentencing. I urge you to read it; I urge you to discuss it with your attorneys before sentencing. If there are any mistakes in the report, please point them out to your lawyers so that they can bring them to my attention before sentencing.

Will you agree to do that?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right.

Ms. Macedonio, is this a case in which you are seeking an expedited sentence?

MS. MACEDONIO: No.

THE COURT: All right. Then how about for sentencing, Tuesday, April the 8th, at 11 a.m.

Government, does that work for you?

MS. WHEELOCK: Yes.

OCJVPERP

THE COURT: Defense.

MS. MACEDONIO: May I have one minute, your Honor?

THE COURT: Of course.

MS. MACEDONIO: Judge, I'm scheduled to start a trial on the 7th of April. Could we do it maybe the week before?

THE COURT: Week before is fine.

How about Tuesday, April 1 at 11 a.m.?

MS. MACEDONIO: Thank you, your Honor.

MS. WHEELOCK: That works.

THE COURT: All right. Sentencing then will be set for April 1 at 11 a.m.

Ms. Macedonio, you must arrange for your client to be interviewed by the probation department within the next two weeks. I'm assuming that's going to be doable. Obviously, if the holidays get in the way, just make it as soon as possible thereafter.

Government counsel, you should provide your case summary to the probation department within the next two weeks.

Defense submissions in connection with sentencing will be due two weeks before the sentencing, and the government's submission will be due one week before.

The defendant is detained; correct?

MS. MACEDONIO: Yes, that's correct.

THE COURT: All right.

Anything else to raise before we adjourn?

OCJVPERP

MS. WHEELOCK:  I think just to dismiss the three other counts.

THE COURT:  Not till sentencing.

MS. WHEELOCK:  Oh, sorry, your Honor.  Thank you.

THE COURT:  I imagine that would have been an unopposed motion.

MS. MACEDONIO:  Definitely unopposed.

THE COURT:  Yeah, but I think premature.

All right.  Have a nice holiday, everyone.

\*     \*     \*